UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| COACH, INC., ET AL., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) CIVIL ACTION NO. |
| VS. | ) |
| | ) 3:17-CV-0894-G |
| TB NAILS PRODUCT, INC., ET AL., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendants TB Nails Product, Inc. ("TB Nails") and Gio Van Tran ("Van Tran") to dismiss the plaintiffs' claims against them for lack of personal jurisdiction (docket entry 11). For the reasons set forth below, the motion is denied.

## I. BACKGROUND

Plaintiff Coach, Inc., is a Maryland corporation with its principal place of business in New York, New York. Complaint ¶ 5 (docket entry 1). Plaintiff Coach Services, Inc., is a Maryland corporation with its principal place of business in Jacksonville, Florida. *Id.* ¶ 6.

TB Nails, a California corporation and previously a wholesale supply business, is no longer doing business. *Id*. ¶ 7; Opposed Motion to Dismiss Under Rule 12(b)(2) ("Motion") ¶¶ 1, 2 (docket entry 11).

Tran, a California resident, is the president, chief executive officer, and sole shareholder of TB Nails. Complaint ¶ 8; Motion ¶¶ 1, 3; Affidavit in Support of Motion to Dismiss Under Rule 12(b)(2) ("Tran Affidavit") at 1, *attached as* Exhibit A to Motion.

Coach, Inc., and Coach Services, Inc., (collectively, "Coach") manufacture, market, and sell fine leather and mixed material goods. Complaint ¶ 10. Coach sells its goods throughout the United States, including in Texas. *Id*. Coach holds many trademarks registered with the United States Patent and Trademark Office. *Id*. ¶¶ 17-19. Additionally, Coach asserts that is "has been the sole owner and proprietor of all rights, title, and interest in and to the copyrights in the Coach Design Elements used on Coach Products, and such copyrights are valid, subsisting and in full force and effect." *Id*. ¶ 30.

On December 23, 2015, Joel Voyles ("Voyles"), an undercover investigator hired by Coach, entered A-1 Beauty & Nails Warehouse ("Nails Warehouse"), identified as "Nails Warehouse" by signage, located at 9780 Walnut Street, Suite Number 240, in Dallas, Texas, to purchase items bearing Coach trademarks. Complaint ¶ 32; Appendix in Support of Plaintiffs' Response to Defendants' Opposed

Motion to Dismiss Under Rule 12(b)(2) ("Appendix") at App. 17, 19. Voyles saw five sets of Coach trademarked nail tips for sale and purchased one set. Complaint ¶ 32; Appendix at App. 19-22. Thereafter, he determined the set was counterfeit and infringed on Coach's intellectual property. Complaint ¶ 32. Coach does not manufacture nail tips. Appendix at App. 23. Coach contends that the defendants sold these counterfeit products to Nails Warehouse. Complaint ¶ 33; Plaintiffs' Response to Defendants' Unopposed Motion to Dismiss Under Rule 12(b)(2) ("Response") at 2-3 (docket entry 22).

Coach subsequently brought this action against TB Nails and Van Tran for trademark counterfeiting, trademark infringement, trade dress infringement, false designation of origin and false advertising, trademark dilution, copyright infringement, unfair competition, and unjust enrichment. *See generally* Complaint. The defendants move to dismiss Coach's claims against them for lack of personal jurisdiction. *See generally* Motion.

## II. ANALYSIS

### A. The Factual Standard: A *Prima Facie* Case

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Gardemal v. Westin Hotel Company*, 186 F.3d 588, 592

(5th Cir. 1999). If the district court chooses to decide the matter without an evidentiary hearing, the plaintiff may meet its burden by presenting a *prima facie* case for personal jurisdiction. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592.

The court will take the allegations of the complaint as true, except where they are controverted by opposing affidavits, and all conflicts in the facts are resolved in favor of the plaintiff. *Wilson*, 20 F.3d at 648; *Gardemal*, 186 F.3d at 592. In making its determination, the court may consider affidavits, interrogatories, depositions, oral testimony, or any combination of recognized discovery methods. *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997), *cert. denied*, 522 U.S. 1048 (1998); *Thompson v. Chrysler Motors Corporation*, 755 F.2d 1162, 1165 (5th Cir. 1985).

B. The Legal Standard

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state permits the exercise of personal jurisdiction over the defendant; and (2) the exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). A defendant is amenable to the personal jurisdiction of a federal court sitting in diversity to the same extent that it would be amenable to the jurisdiction of a state court in the same forum. *Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 347 (5th Cir. 1984). Applying state law, this court must first determine whether Texas, the forum state, could assert long-arm

jurisdiction. *Id*. Because the Texas long-arm statute confers jurisdiction to the limits of the federal constitution, *Access Telecom, Inc. v. MCI Telecommunications Corporation*, 197 F.3d 694, 716 (5th Cir. 1999), *cert. denied*, 531 U.S. 917 (2000); *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex. 1982), *rev'd on other grounds*, 466 U.S. 408 (1984), the court need only concern itself with the federal due process inquiry. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999); *Wilson*, 20 F.3d at 647 n.1; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 17.041, *et seq*. (Texas long-arm statute).

C. <u>Due Process Requirements</u>

1. *Minimum Contacts*

Due process requires the satisfaction of three elements to exercise personal jurisdiction over a nonresident defendant: (1) the nonresident must have some minimum contact with the forum that results from an affirmative act on its part such that the nonresident defendant could anticipate being haled into the courts of the forum state; (2) the claim must arise out of or be related to those activities; and (3) it must be fair or reasonable to require the nonresident to defend the suit in the forum state. *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir.), *cert. denied*, 548 U.S. 904 (2006); see also *Burger King Corporation v. Rudzewicz*, 471 U.S. 462, 474-78 (1985). The Due Process Clause ensures that persons have a "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign

sovereign." *Burger King*, 471 U.S. at 472 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring)).

To establish minimum contacts with the forum, a nonresident defendant must do some act by which it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 474-75 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). However, the unilateral activity of one asserting a relationship with the nonresident defendant does not satisfy this requirement. *Burger King*, 471 U.S. at 474 (quoting *Hanson*, 357 U.S. at 253); *Helicopteros Nacionales*, 466 U.S. at 417 (citing *Kulko v. California Superior Court*, 436 U.S. 84, 93-94 (1978); *Hanson*, 357 U.S. at 253). In determining whether the exercise of jurisdiction is appropriate, the Supreme Court has focused less on presence in the forum state as a means to establish jurisdiction and looked increasingly to whether a defendant's contacts with the forum state make it reasonable to require the defendant to defend the particular suit in that forum. *Quill Corporation v. North Dakota*, 504 U.S. 298, 307 (1992).

Two types of *in personam* jurisdiction may be exercised over a nonresident defendant: specific jurisdiction and general jurisdiction. Specific jurisdiction exists if the cause of action is related to, or arises out of, the defendant's contacts with the forum state and those contacts meet the due process standard. *J.R. Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 871 (5th Cir. 2000) (quotations and

citations omitted). "When a court exercises personal jurisdiction over a defendant based on contacts with the forum related to the particular controversy, the court is exercising 'specific jurisdiction.'" *Holt Oil & Gas Corporation v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986) (citations omitted), *cert. denied*, 481 U.S. 1015 (1987). Here, the parties agree that the court need only focus on the exercise of specific jurisdiction as the basis for the assertion of personal jurisdiction in this case. Response at 2; Defendants' Reply to Plaintiff's [sic] Response to Defendants' Motion to Dismiss ("Reply") at 1-2 (docket entry 26).

Under this analysis, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum [s]tate." *Burger King*, 471 U.S. at 474 (quoting *International Shoe Company v. Washington*, 326 U.S. 310, 316 (1945)). The "purposeful availment" requirement of the minimum contacts inquiry "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Id*. at 475 (citations omitted). A plaintiff must establish a substantial connection between the nonresident defendant and the forum state. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992); *Bearry v. Beech Aircraft Corporation*, 818 F.2d 370, 374 (5th Cir. 1987) (citing *Burger King*, 471 U.S. at 475 n.18; *McGee v. International Life Insurance Company*, 355 U.S. 220, 223 (1957)).

A court must consider all factors when making the purposeful availment inquiry: "no single factor, particularly the number of contacts, is determinative." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982); see also *Coats v. Penrod Drilling Corporation*, 5 F.3d 877, 884 (5th Cir. 1993), *cert. denied*, 510 U.S. 1195 (1994).

### 2. *Fair Play and Substantial Justice*

The due process inquiry limits the court's power to exercise personal jurisdiction over a nonresident if the exercise of jurisdiction under the circumstances would offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Once the plaintiff establishes minimum contacts between the defendants and the forum State, the burden of proof shifts to the defendants to show that the assertion of jurisdiction is unfair and unreasonable. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).

To determine whether personal jurisdiction comports with fair play and substantial justice, the court must examine a number of factors, including: (1) the

defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the interstate judicial system's interest in efficient resolution of controversies; and (5) the shared interests of the several states in furthering fundamental substantive social policies. *Asahi Metal Industry Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 113 (1987). "[O]nce minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Enviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp.2d 720, 725 (S.D. Tex. 1999) (quoting *Burger King*, 471 U.S. at 477). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* (quoting *Guardian Royal Exchange Assurance, Limited v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

D. Application of the Personal Jurisdiction Standards

Coach contends that the court may exercise specific jurisdiction over the defendants because they have established the requisite contacts with the State of Texas. Response at 7. Coach alleges that the defendants shipped counterfeit and infringing products bearing Coach's protected marks to Nails Warehouse in Dallas, Texas, for further distribution in Texas, and that Nails Warehouse sold these products. *Id*. at 4-7. The defendants do not deny shipping products to Nails

Warehouse or doing business with Nails Warehouse. *Id*. at 5; *see also* Tran Affidavit at 2. Rather, the defendants deny any products they shipped to Nails Warehouse were counterfeit or infringed upon Coach's protected marks. *Id*. at 6; *see also* Tran Affidavit at 2.

TB Nails, on the other hand, maintains that it has insufficient contacts with the State of Texas to support the exercise of specific jurisdiction because it did not maintain bank accounts in Texas, did not employ Texas residents, and "[did] not direct the bulk of its business toward Texas." Motion at 3.

In objecting that this court does not have personal jurisdiction over him, Tran avers that "[a]t no time have I ever done business in connection with TB NAILS in any capacity other than in my capacity as an officer and manager of that company. In my individual capacity, I have never done business with A-1 Beauty & Nails Warehouse or with any other firm or facility in the state of Texas, nor have I ever individually resided in or done business in the state of Texas. I am a resident of the state of California." Tran Affidavit at 2. Tran further contends that "TB NAILS was never affiliated with the entity identified in Plaintiffs' Complaint herein as 'A-l Beauty & Nails Warehouse' in Dallas, Texas. Although TB NAILS occasionally did business, prior to shutting its doors, with an entity at the address known as 'Nails Warehouse' . . . . " *Id*. A-l Beauty & Nails Warehouse in fact does business as Nails

Warehouse. Appendix at App. 02; see also *id.* at App. 09-14 (invoices from TB Nails to Nails Warehouse).

Coach seeks to impose liability on Tran in his corporate, not individual, capacity. Response at 9. Coach's basis for its cause of action against Tran is the fact that he, while acting as a corporate officer of TB Nails, participated in causing Coach's alleged injuries, thus providing a distinct ground for the assertion of personal jurisdiction over him. *Id*.

Tran alludes to the fiduciary shield doctrine in his reply brief as a bar to this court's assertion of jurisdiction over him. Reply at 2. Under the fiduciary shield doctrine, "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation." *Stuart*, 772 F.2d at 1197. Hence, acts performed within the forum state by a corporate officer on behalf of the corporation usually cannot provide a basis for personal jurisdiction over the officer in his *individual* capacity. *Id*. However, the doctrine would not apply if Tran, in his role as a corporate agent, committed a tort in his corporate capacity. See *id*. "It is well settled law that when corporate officers directly participate in or authorize the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1312 (5th Cir. 1991) (citation omitted). The issue before the court, however, is not

whether Tran may be held personally liable for the torts he allegedly committed. Rather, the court must determine whether Tran, acting in his corporate capacity, may be subject to the *in personam* jurisdiction of this court. That Tran was an officer of TB Nails is insufficient, without more, to establish minimum contacts.

Coach has submitted the affidavit of Nails Warehouse owner Bichvan Dinh Pham ("Pham") in support of its *prima facie* case. *See* Appendix at App. 02-07, Response at 11. The Pham affidavit establishes that Pham purchased the infringing nail tips from the defendants with Tran as the point of contact. Specifically, Pham asserts the following.

> The following are a true and correct copies of photographs of nail tips (the "Nail Tips") bearing Coach, Inc. and Coach Services, Inc.'s (collectively "Coach") marks and logos that were sold by Nails Warehouse to a Coach investigator on or about December 23, 2015. These same Nail Tips were purchased from the Defendants, and the Defendants shipped these Nail Tips to the Warehouse location in Dallas, Texas for resale in Texas. When Nails Warehouse purchased these Nail Tips from the Defendants, *Tran was point of contact that facilitated the sale and shipment to the Warehouse location in Dallas*.

*Id*. at App. 03 (emphasis added).

There is a significant connection between the defendants, Texas, and Coach's claims that permits the exercise of specific jurisdiction in this case, and the plaintiffs' causes of action are related to those contacts. The court finds that Tran's alleged personal involvement in the tortious conduct, as alleged, is sufficient to sustain this

court's exercise of *in personam* jurisdiction over him. See *Union Carbide Corporation v. UGI Corporation*, 731 F.2d 1186, 1189 (5th Cir. 1984); see also *Donovan v. Grim Hotel Company*, 747 F.2d 966, 974 (5th Cir. 1984) ("Nor is due process offended when a non-resident corporate agent or employee is made subject to personal jurisdiction in the forum state for a foreseeable consequence therein of his personal act performed elsewhere, although allegedly performed only as a corporate functionary.") (citation omitted), *cert. denied*, 471 U.S. 1124 (1985). Thus, Tran cannot invoke the fiduciary shield doctrine to defeat jurisdiction. See *Union Carbide*, 731 F.2d at 1189.

Exercise of personal jurisdiction over the defendants does not offend due process because they directed their sales to a company in Texas, stood to personally benefit from dealings with Nails Warehouse, should have reasonably anticipated being haled into a Texas court after purposefully directing their activities toward a Texas corporation, and could have predicted that any injury that resulted from their alleged activities would occur in Texas. See *Healix Infusion Therapy, Inc. v. Helix Health, LLC*, Civil Action No. H–08–0337, 2008 WL 1883546, at *6 (S.D. Tex. Apr. 25, 2008) ("[A] defendant that 'expressly aims' its trademark-diluting conduct at residents of a forum state can be said to have purposely directed its activities toward that forum, and should therefore reasonably anticipate being haled into court in that forum.") (citation omitted).

Practically every fact material to the determination of personal jurisdiction over the defendants is contested. In this situation, the court must resolve conflicts between the facts contained in the parties' affidavits in the plaintiffs' favor for purposes of determining whether a *prima facie* case for personal jurisdiction has been established. See *Thompson*, 755 F.2d at 1165. Thus, the court finds that the plaintiffs have presented a *prima facie* case for personal jurisdiction.

Finally, the court must find that it would be fair to exercise jurisdiction over TB Nails and Tran. Whatever burden placed on the defendants by being forced to litigate this matter in a Texas forum is outweighed by the plaintiffs' and Texas' interests. "[B]ecause 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Burger King*, 471 U.S. at 474 (quoting *McGee*, 355 U.S. at 223); see also *Ruston Gas Turbines, Inc. v. Donaldson Company, Inc.*, 9 F.3d 415, 421 (5th Cir. 1993). Furthermore, minimum contacts with Texas and the plaintiffs' cause of action related to those contacts having been established, the defendants have failed to present any case, much less a compelling one, that would render the exercise of personal jurisdiction by a Texas court unreasonable. Thus, the assertion of personal jurisdiction by this court is fair and safely within the limits imposed by due process. Accordingly, the court

concludes that Coach has met the burden of establishing specific personal jurisdiction over TB Nails and Tran. As a result, the defendants' motion is dismiss for lack of personal jurisdiction is denied.

### III. CONCLUSION

For the reasons stated above, the defendants' motion to dismiss for lack of personal jurisdiction is **DENIED**.

**SO ORDERED.**

March 30, 2018.

_____
**A. JOE FISH**
**Senior United States District Judge**